UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 21-10626-RGS


BERKLEY NATIONAL INSURANCE COMPANY

v.

GRANITE TELECOMMUNICATIONS LLC and
ATLANTIC NEWPORT REALTY LLC


MEMORANDUM AND ORDER ON
DEFENDANTS' MOTION FOR JUDGMENT
ON THE PLEADINGS


March 28, 2022


STEARNS, D.J.

Plaintiff Berkley National Insurance Company (Berkley) is suing Granite Telecommunications LLC (Granite) and Atlantic Newport Realty LLC (Atlantic) seeking reimbursement for the costs that it incurred in defending them against, and ultimately settling, a personal injury lawsuit brought by Stephen Papsis. Defendants now seek judgment on the pleadings, arguing that Berkley's claims fail as a matter of law. After reviewing the parties' briefs and the underlying pleadings, the court will deny defendants' motion.

## BACKGROUND

Granite is a telecommunications company operating at 100 Newport Avenue in Quincy, Massachusetts, under a lease agreement with Atlantic, the owner of the property. Am. Compl. ¶ 10. From June 30, 2016, through June 30, 2017, Granite was the named insured in a Commercial Lines Policy (the Policy) issued by Berkley.[1] *Id.* ¶¶ 35, 40 & Ex. C. The Policy stated that Berkley would cover sums "that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage,'" and that Berkley would "have the right and duty to defend the insured against any 'suit' seeking those damages." *Id.* ¶ 36. The Policy's coverage included the cost of settling any such suits. *Id.*

The Policy, however, included the caveat that Berkley would "have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply." *Id.* ¶ 36. Of immediate relevance, the Policy stated that Berkley was not obligated to pay costs arising from bodily injury that "would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, contact with, exposure to, existence of, or presence of, any 'fungi' or bacteria on or within

---

[1] Atlantic was an additional insured in the Policy. Am. Compl. ¶¶ 35, 40 & Ex. C.

a building or structure." *Id.* ¶ 37.  Further, the Policy explicitly excluded coverage for costs associated with bodily damage "arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration release or escape of 'pollutants.'" *Id.* ¶ 38.

On November 10, 2016, Stephen Papsis was working as a chef in Granite's café when sewage backed up from the building's drains into his workspace.  *Id.* ¶ 11.  Because of the sewage, Papsis suffered an infection in his foot causing various protracted health issues, which in turn necessitated several medical procedures.  *Id.* ¶¶ 15-23, 28.  On November 19, 2016, Papsis filed a personal injury suit against defendants, alleging negligence in failing to maintain the building in a safe condition.  *Id.* ¶ 12.

Berkley initially proposed that any settlement in the Papsis lawsuit be jointly funded by Berkley and defendants – a proposal that defendants rejected, insisting that Berkley cover the entire amount.  *Id.* ¶¶ 31-32. Defendants' counsel stated in an email that Berkley "ha[d] a statutory obligation under [Mass. Gen. Laws ch.] 176D" to cover the cost of settlement and threatened to sue Berkley if it did not agree to wholly fund the settlement.  Aylward Aff. Ex. A (Dkt # 70-1) at 2.  Berkley capitulated, but reserved its right to subsequently deny coverage under the Policy's bacteria and pollutant exclusion provisions and seek reimbursement.  *Id.* ¶¶ 33, 40.

On August 31, 2021, the parties in the Papsis lawsuit reached a settlement, which Berkley paid under the reservation of rights. *Id.* ¶ 34.

On September 9, 2021, Berkley filed its Amended Complaint, seeking declaratory relief that it was entitled to reimbursement from defendants for the costs incurred in defending and settling the Papsis lawsuit. Defendants' motion for judgment on the pleadings is now before the court.

## DISCUSSION

Rule 12(c) of the Federal Rules of Civil Procedure permits a party to move for judgment on the pleadings at any time "[a]fter the pleadings are closed," if the motion does not delay the trial. A Rule 12(c) motion differs from a Rule 12(b)(6) motion in that it implicates the pleadings in their entirety. "In the archetypical case, the fate of such a motion will depend upon whether the pleadings, taken as a whole, reveal any potential dispute about one or more of the material facts." *Gulf Coast Bank & Tr. Co. v. Reder*, 355 F.3d 35, 38 (1st Cir. 2004). "In reviewing a motion under Rule 12(c), as in reviewing a Rule 12(b)(6) motion, [a court] may consider documents the authenticity of which are not disputed, documents central to the plaintiff's claim, and documents sufficiently referred to in the complaint." *Curran v. Cousins*, 509 F.3d 36, 44 (1st Cir. 2007).

4

At the heart of the instant dispute is the parties' disagreement over how the Supreme Judicial Court's decision in *Medical Malpractice Joint Underwriting Association of Massachusetts v. Goldberg*, 425 Mass. 46 (1997), is to be applied. Defendants contend that *Goldberg* stands for the proposition that an insurer cannot recoup a settlement payment unless the insured has expressly agreed to such an arrangement, and that an insurer's unilateral reservation of the right to seek reimbursement (as in this case) without such an agreement will always be ineffective. For its part, Berkley argues that defendants' unnuanced reading of *Goldberg* would "render toothless the remedies . . . by which insurers may protect their rights while still carrying out their duty to defend cases that present coverage issues." Berkley Opp'n (Dkt # 69) at 9-10. The court agrees with Berkley.

In *Goldberg*, a patient had sued her psychiatrist (Goldberg) for sexual misconduct. 425 Mass. at 48. The Medical Malpractice Joint Underwriting Association (JUA), Goldberg's insurer, agreed to defend Goldberg in the lawsuit but unilaterally reserved its rights to seek reimbursement. *Id.* at 48-49. The suit proceeded to trial, and the jury found for the patient. *Id.* at 52. However, the trial judge refused to award Chapter 93A damages against Goldberg after ruling that the Unfair Business Practices Act did not apply to psychiatrist-patient relationships. *Id.* at 52-53. Both sides appealed. *Id.* at

5

53.   JUA's appellate counsel advised it that the patient's appeal on the Chapter 93A ruling "posed unusual risks" to JUA going forward.  *Id.*  The patient offered to settle her case, and "JUA accepted her offer without any notice to or consultation with . . . Goldberg."  *Id.* at 54.

The Supreme Judicial Court (SJC) concluded that JUA was not entitled to reimbursement for the settlement award, stating:

> Where an insurer defends under a reservation of rights to later disclaim coverage, as JUA did here, it may later seek reimbursement for an amount paid to settle the underlying tort action only if the insured has agreed that the insurer may commit the insured's own funds to a reasonable settlement with the right later to seek reimbursement from the insured, or if the insurer secures specific authority to reach a particular settlement which the insured agrees to pay.  The insurer may also notify the insured of a reasonable settlement offer and give the insured an opportunity to accept the offer or assume its own defense.  None of those conditions was met by JUA.

*Id.* at 58-59.

Unlike the situation in *Goldberg*, in which JUA unilaterally accepted the patient's settlement offer without any notice to Goldberg (and did so primarily out of concern for its own interests), *id.* at 60-61, defendants participated fully in the mediation process, and all parties – Berkley, Granite, Atlantic, and Papsis – mutually agreed on the amount of the settlement award.  More importantly, defendants' actions in coercing Berkley to pay the

full settlement amount essentially left Berkley without the viable options that were available to JUA in *Goldberg*.

In explaining its denial of JUA's claim of entitlement to seek reimbursement, the SJC reasoned:

> We do not accept JUA's claim that an insured can "whipsaw" an insurer by demanding that it settle the case (as Goldberg did here) while, at the same time, refusing to agree to reimburse the insurer should it be determined that there is no coverage for the claims asserted.  Once JUA had negotiated the best offer from [the patient] . . . , it could have asked Goldberg for authority to pay that amount.  JUA could also have sought an agreement from Goldberg that it would settle the lawsuit, as Goldberg had instructed, only if Goldberg agreed to reimburse JUA if its coverage position were sustained.  JUA pursued neither option.

*Id.* at 61.

Here, however, defendants attempted to foreclose those options to Berkley by threatening legal action if Berkley sought to pursue them.  Indeed, defendants' counsel portentously warned Berkley in an email that "[s]hould [it] fail to make settlement offers in line with defense counsel's recommendations, and/or make unreasonable demands on the Defendants to fund a portion of any settlement themselves, Berkley National will be risking significant exposure under [Mass. Gen. Laws ch.] 176D."  Aylward Aff. Ex. A at 2.  In effect, defendants "whipsawed" Berkley into exercising its only feasible option: paying the full settlement amount and maintaining its unilateral reservation of its right to seek reimbursement.

It would be fundamentally unfair to strip an insurer facing such a predicament of any legal recourse.  The court accordingly concludes that, at this stage of the litigation and under this set of factual circumstances, Berkley is not precluded from seeking reimbursement for the cost of settling the Papsis lawsuit simply because defendants had not agreed to Berkley's reservation of rights.[2]

## ORDER

For the foregoing reasons, defendants' motion for judgment on the pleadings is <u>DENIED</u>.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE

---

[2] Defendants also contend that Berkley's unilateral reservation of rights additionally precludes Berkley from seeking reimbursement for costs incurred in *defending* them in the Papsis lawsuit, although defendants concede that the SJC has yet to settle this issue.  Because defendants' argument largely hinges on an extension of their self-serving reading of *Goldberg*, the court concludes that Berkley is not prohibited at this stage from seeking reimbursement for the cost of defending defendants in the Papsis suit as well.