UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 21-10626-RGS

BERKLEY NATIONAL INSURANCE COMPANY

v.

GRANITE TELECOMMUNICATIONS LLC and
ATLANTIC NEWPORT REALTY LLC

MEMORANDUM AND ORDER ON
BERKLEY'S MOTION FOR SUMMARY JUDGMENT

July 29, 2022

STEARNS, D.J.

Berkley National Insurance Company filed this action against Granite Telecommunications LLC and Atlantic Newport Realty LLC (together, defendants) seeking reimbursement for costs it incurred in defending defendants against, and ultimately settling, a personal injury lawsuit filed by Stephen Papsis. Berkley now moves for summary judgment on all Counts of its Complaint, alleging that it had no duty to defend or settle the Papsis suit because it fell under the bacteria/fungi and pollution exclusions to defendants' insurance policy and thus that it is equitably entitled to

restitution.  After careful review of the record and the parties' briefs, the court will allow Berkley's motion in part.

## BACKGROUND

Granite is a telecommunications company with offices at 100 Newport Avenue in Quincy, Massachusetts.  The offices are leased from Atlantic Newport, the owner of the property.  Am. Compl. ¶ 10.  From June 30, 2016, through June 30, 2017, Granite was the named insured in a Commercial Lines Policy (the Policy) issued by Berkley.[1]  *Id.* ¶¶ 35, 40; Consolidated Statement of Facts and Responses (CSFR) (Dkt # 97) at 7.  The Policy stated that Berkley would reimburse sums "that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage,'" and that it would "have the right and duty to defend the insured against any 'suit' seeking those damages."  Am. Compl. ¶ 36.  The Policy's coverage included the cost of settling any such suits.  *Id.*

The Policy, however, contained the proviso that Berkley would "have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply."  *Id.* ¶ 36.  Of immediate relevance, the Policy stated that Berkley was not obligated to

---

[1] Atlantic Newport was an additional insured.  Am. Compl. ¶¶ 35, 40 & Ex. C.

pay costs arising from bodily injury that "would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, contact with, exposure to, existence of, or presence of, any 'fungi' or bacteria on or within a building or structure." CSFR at 8.  Further, the Policy explicitly excluded coverage for costs associated with bodily damage "arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants.'" *Id.*

On November 10, 2016, Papsis was working as a chef in Granite's company café when sewage backed up from the building's drains into his workspace.  Am. Compl. ¶ 11; CSFR at 2-3.  On November 19, 2019, Papsis filed suit against Granite and Atlantic Newport in the Middlesex Superior Court, alleging that he had been "exposed to sewerage emanating from the drains . . . causing serious and permanent injuries."  CSFR at 3.  Papsis reported that "the sewage from the floor drains rose to a level of three inches in the kitchen and got on his shoes in the course of his efforts to deal with the backup," which exposed him to bacteria, "causing [his] foot to become infected." *Id.* at 4; *see id.* at 4-6 (recounting statements that Papsis had made to his employer, Lessing's Food Service Management Corporation).

Berkley undertook the defense of Granite and Atlantic Newport in the Papsis lawsuit, while reserving the right to deny coverage under the Policy's

fungi/bacteria and pollution exclusions.  *Id.* at 9; *see* Dkt # 78 (providing further background on the dispute between Berkley, Granite, and Atlantic Newport).  The parties agreed to mediate Papsis's claims.  CSFR at 9.

Prior to the mediation, Papsis's counsel made a settlement demand of $5.25 million, alleging that Papsis's exposure to "raw sewage" proximately caused "osteomyelitis and Charcot arthropathy of his right foot," resulting in seven separate surgeries "to address [the] infection."  *Id.* at 10.  Papsis's counsel also appended a July 1, 2021, expert report from Dr. Abhay R. Patel, an orthopedic surgeon, to the memorandum, in which Dr. Patel stated:

> It is my opinion within a reasonable degree of medical certainty that this exposure to sewage water directly led to Mr. Papsis developing osteomyelitis along with a Charcot arthropathy of his midfoot.  Other than cellulitis, Mr. Papsis never had any significant issues with his right foot previously before this incident.  It is also my opinion within a reasonable degree of medical certainty that Mr. Papsis's 11/30/2016 foot radiographs showed such extensive bone and joint destruction that [it] is extremely unlikely that Mr. Papsis developed those changes before the 11/10/2016 sewerage exposure incident since it would have been nearly impossible for him to stand on his foot for 10-12 hours a day at this job while such a process was occurring. There are several instances in the literature in which the diabetic patients develop a relatively rapid Charcot arthropathy after an inciting event, which to a reasonable degree of medical certainty, is what occurred in this situation.

*Id.* at 10-11.  On August 31, 2021, the mediation resulted in a confidential settlement that resolved all claims that Papsis had brought against Granite and Atlantic Newport.  *Id.* at 17.

4

On April 15, 2021, Berkley filed this lawsuit in federal court seeking a declaration that it had no duty to defend or indemnify defendants in the Papsis lawsuit. *See* Compl. (Dkt # 1). Berkley also seeks reimbursement from defendants of the costs of defending and settling the suit. On October 25, 2021, Papsis responded to an interrogatory from Berkley that asked whether he believed that any of his injuries "were due to a cause other than exposure to bacteria in sewage that backed up into 100 Newport Ave. EXT on November 10, 2019" by stating, "No answer required." CSFR at 17-18. In response to a request for clarification, Papsis's lawyer sent an email further stating, "Mr. Papsis is not contending that his injuries were caused by something other than bacteria in sewage, so 'no answer required' is the only truthful response." *Id.* at 18.

## DISCUSSION

"Summary judgment is warranted if the record, construed in the light most flattering to the nonmovant, 'presents no genuine issue as to any material fact and reflects the movant's entitlement to judgment as a matter of law.'" *Lawless v. Steward Health Care Sys., LLC*, 894 F.3d 9, 21 (1st Cir. 2018), quoting *McKenney v. Mangino*, 873 F.3d 75, 80 (1st Cir. 2017). The moving party "bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record]

which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).   If this is accomplished, the burden then "shifts to the nonmoving party to establish the existence of an issue of fact that could affect the outcome of the litigation and from which a reasonable [factfinder] could find for the nonmoving party." *Rogers v. Fair*, 902 F.2d 140, 143 (1st Cir. 1990).

**Counts I & II – Declaratory Judgment**

### *Duty to Indemnify*

At the heart of the dispute over the applicability of the fungi/bacteria and pollution exclusions to the Papsis settlement are the parties' conflicting interpretations of two cases – *Travelers Insurance Co. v. Waltham Industrial Laboratories Corp.*, 883 F.2d 1092 (1st Cir. 1989), and *Rass Corp. v. Travelers Cos., Inc.*, 90 Mass. App. Ct. 643 (2016) – that explain the steps to be taken in determining whether an insurer has a duty to indemnify an insured in a lawsuit pursuant to a relevant policy exclusion.

In *Travelers*, the insurer sought declaratory judgment that it had no duty to defend or indemnify an insured who was sued by its landlord and by the Massachusetts Water Resources Authority (MWRA) for damage caused by the discharge of corrosive chemicals.  *See* 883 F.2d at 1093.  Both lawsuits ultimately settled prior to trial, and the insurer argued that a pollution

exclusion to the insured's policy applied to defending and settling the suits. *See id.* The district court agreed and granted the insurer summary judgment. *See id.*

On appeal, the First Circuit considered the duty to indemnify in a settlement context, stating that "the duty to indemnify must be determined [on] the basis of the settlement and, since this was a summary judgment proceeding, the undisputed facts." *Id.* at 1099. The First Circuit affirmed the district court's conclusion that the insurer had no duty to indemnify the insured for the settlement with the MWRA, but remanded the case for trial on the issue of whether the insurer had a duty to indemnify the insured for the settlement with the landlord. *Id.* Specifically, the First Circuit concluded that there was a dispute of material fact as to whether the contaminated sludge discovered in the crawl space of the insured's business fell within the pollution exclusion of the insurance policy. *Id.* This was, the First Circuit intimated, because the sludge was presumably "a factor in the settlement sum paid to" the landlord. *Id.* at 1100.

In *Rass*, as in *Travelers*, the litigation "did not proceed to judgment, but settled." 90 Mass. App. Ct. at 650. Because the insurer's "liability under the policy and, in turn, its duty to indemnify [the insured] for covered losses were not determined on the record in the underlying case," the

Massachusetts Appeals Court stated that it was "left to determine an insurer's duty to indemnify by looking to the basis for the settlement; i.e., whether any portion of the settlement was made in compensation for the acts alleged in the underlying complaint, and, if so, whether those acts are covered under the policy language." *Id.*, citing *Travelers*, 883 F.2d at 1099. The Appeals Court continued: "The relevant inquiry in determining an insurer's obligation in these circumstances is 'how the parties to the settlement viewed the relative merits of the plaintiff's claims at the time of the settlement.'" *Id.* at 651, quoting Windt, Insurance Claims & Disputes, § 6.31, at 310-311 (6th ed. 2013).

Defendants attempt to distinguish *Rass* from the present case, arguing that *Rass* applies solely to the "irrelevant question of how to allocate between insurer and insured a settlement that accounted for both covered and noncovered claims." Defs'. Opp'n (Dkt # 91) at 2. However, a closer look at the language in the Windt treatise quoted extensively by the Appeals Court in *Rass* clearly establishes that *Rass*'s holding is intended to extend to denial of insurance coverage in all cases that end in settlement:

> Following a settlement as to which the insurer denies coverage, the existence of coverage should depend on what claims were settled; that is, it should depend on why the money was paid. The actual merit of each of the plaintiff's claims against the insured is not directly relevant. The only question should be how the parties to the settlement viewed the relative merits of the

plaintiff's claims at the time of the settlement . . . .  Neither the insurer nor the insured should be allowed to try the plaintiff's claim in the coverage suit.

Windt, *supra* at § 6.31, at 310-311.

To sum it up, an insurer's duty to indemnify an insured for an underlying case that has settled rather than going to trial must be ascertained through the lens of the settlement and (at the summary judgment stage) any undisputed facts.

Guided by this understanding, the court readily concludes that the settlement of the Papsis lawsuit falls within the Policy's bacteria exclusion and thus is not covered.  The undisputed facts show that Papsis remained unwavering in his claim that his injuries were caused by his exposure to bacteria in the toxic sewage that backed up into his workspace.  The settlement reached at mediation was intended to compensate Papsis for the infection to his foot, which was the only injury asserted in his lawsuit.  Recalling that the Policy's bacteria exclusion precludes coverage for "bodily injury" that "would not have occurred, in whole or in part, but for the actual, alleged or threatened . . . exposure to . . . any 'fungi' or bacteria on or within a building or structure," there could be no plainer example of the type of case to which the exclusion was meant to apply.  CSFR at 8.

Moreover, although there is some evidence in the record suggesting that defendants' counsel believed that there were weaknesses in Papsis's case prior to the mediation, *see id.* at 24-26, they nonetheless cautioned the defendants that they faced "'significant exposure,' based on the sympathetic nature of Papsis'[s] severe injuries, with a possible jury verdict of $3-4 million and a settlement value of $1-1.75 million." *Id.* at 25.  Defendants took the warning to heart, insisting that Berkley "make reasonable settlement offers to Mr. Papsis at the upcoming mediation (and at all other times)." *Id.* at 13.

### *Duty to Defend*

Similarly, Berkley had no duty to defend in the Papsis lawsuit.  "In determining the duty to defend, 'the process is one of envisaging what kinds of losses may be proved as lying within the range of the allegations of the complaint, and then seeing whether any such loss fits the expectation of protective insurance reasonably generated by the terms of the policy.'" *Travelers*, 883 F.2d at 1100, quoting *Sterilite Corp. v. Continental Cas. Co.*, 17 Mass. App. Ct. 316, 318 (1983).  Here, the only losses conceivably lying within the scope of the allegations of Papsis's Complaint are those that resulted from his exposure to bacteria in the overflow of the raw sewage. Consequently, the court will grant summary judgment for Berkley on Count

II of the Amended Complaint, which seeks a declaratory judgment that Berkley did not owe defendants a duty to defend and settle the Papsis lawsuit because of the application of the Policy's bacteria exclusion.[2]

## Count III – Equitable Restitution

"Restitution is an equitable remedy by which a person who has been unjustly enriched at the expense of another is required to repay the injured party." *Keller v. O'Brien*, 425 Mass. 774, 778 (1997).  "In order to prevail on its claim for reimbursement of . . . insurance benefits it paid to [defendants] under a reservation of rights, [Berkley] must establish not only that [defendants] received a benefit, which is not disputed, but also that such a benefit was unjust."  *Met. Life Ins. Co. v. Cotter*, 464 Mass. 623, 644 (2013); *see Global Investors Agent Corp. v. Nat'l Fire Ins. Co.*, 76 Mass. App. Ct. 812,

---

[2] Unlike the bacteria exclusion, the court concludes that defendants have established a genuine dispute of material fact as to whether the pollution exclusion applies to the Papsis lawsuit.  Specifically, the summary judgment record, when construed in the light most favorable to defendants, demonstrates that there is some ambiguity as to whether the sewage was a "pollutant" under the terms of the Policy.  *See, e.g.*, CSFR at 19-23; Defs.' Opp'n at 15-18.  Thus, the court will deny summary judgment on Count I of the Amended Complaint, which seeks a declaration that Berkley did not owe defendants a duty to defend and settle the Papsis lawsuit because of the Policy's pollution exclusion.  However, because – as discussed above – the Papsis lawsuit plainly falls under the bacteria exclusion of the Policy, the court need not resolve the applicability of the pollution exclusion to grant Berkley's requested relief.

826 (2010) (whether a benefit is unjust "turns on the reasonable expectations of the parties").

As the court discussed in greater detail in its memorandum and order denying defendants' motion for judgment on the pleadings, *see* Dkt # 78, the parties should reasonably have expected that Berkley would seek reimbursement from defendants pursuant to its explicit reservation of rights. Unlike in cases such as *Cotter*, 464 Mass. at 644, or *Medical Malpractice Joint Underwriting Association of Massachusetts v. Goldberg*, 425 Mass. 46, 58-59 (1997), where insurers defended and indemnified insureds under a nonbinding, unilateral reservation of rights, Berkley was effectively forced by defendants to pay for the cost of defending and settling the Papsis lawsuit because defendants threatened to sue Berkley if it did not do so.  As the court pointed out, "defendants 'whipsawed' Berkley into exercising its only feasible option: paying the full settlement amount and maintaining its unilateral reservation of its right to seek reimbursement."  Mem. and Order on Defs.' Mot. for J. on the Pleadings (Dkt # 78) at 7.  "It would be fundamentally unfair to strip an insurer facing such a predicament of any legal recourse," and it would be fundamentally unjust for defendants to retain the benefit of Berkley's coverage of the Papsis lawsuit given that Berkley was under no obligation to defend or indemnify defendants, even though it was forced by

defendants to do both.[3]  *Id.* at 8.  Consequently, the court will allow summary judgment in Berkley's favor on Count III of its Amended Complaint.[4]

## ORDER

For the foregoing reasons, Berkley's motion for summary judgment is ALLOWED as to Counts II and III and DENIED as to Counts I, IV, and V. Pursuant to Count II of the Complaint, the court declares that Berkley does not owe coverage for the Papsis claims by reason of the fungi or bacteria exclusion in the Policy.  Further, the court concludes that Berkley is entitled to be reimbursed by defendants for the legal fees and costs that it has

---

[3] The Massachusetts Supreme Judicial Court has not yet squarely addressed "whether an insurer may seek reimbursement for the costs of a defense undertaken pursuant to a unilateral reservation of rights." *Cotter*, 464 Mass. at 641 n.1.  However, given that defendants' unfair behavior in forcing Berkley to defend the Papsis lawsuit bears a flavor of extortion, the court concludes that allowing defendants to retain the benefit of Berkley's defense coverage would be manifestly unjust.  *See Holyoke Mut. Ins. Co. v. Vibram USA, Inc.*, 2017 WL 1336600, at *8 (Mass. Super. Ct. Mar. 21, 2017) ("In order to prove that it is unjust for an insured to retain defense costs advanced in respect of a third-party claim under a reservation of rights, an insurer must do more than prove that a court ultimately held that the claims were uncovered. . . .  If a policy holder engaged in misrepresentations or other wrongful conduct . . . , retention of defense costs might well be 'unjust.'").

[4] As Counts IV and V of the Amended Complaint turn on conditions precedent that have not yet occurred (namely, court rulings that there is coverage under Hanover Insurance policies for which Granite is an additional insured and that Lessing's has a duty to reimburse Granite), they are not yet ripe for disposition.  Therefore, the court will deny summary judgment on these Counts.

incurred in defending the Papsis lawsuit, as well as the cost of settling the Papsis lawsuit on defendants' behalf.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE