UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 21-10626-RGS

BERKLEY NATIONAL INSURANCE COMPANY

v.

GRANITE TELECOMMUNICATIONS LLC and
ATLANTIC NEWPORT REALTY LLC

v.

LESSING'S FOOD SERVICE MANAGEMENT CORP.,
THE HANOVER AMERICAN INSURANCE COMPANY,
and THE HANOVER INSURANCE COMPANY

MEMORANDUM AND ORDER ON
CROSS-MOTIONS FOR SUMMARY JUDGMENT

November 14, 2022

STEARNS, D.J.

Granite Telecommunications, LLC (Granite) brought this Third-Party Complaint (TPC) against Lessing's Food Service Management Corporation (Lessing's) and the Hanover Insurance Company and the Hanover American Insurance Company (together, Hanover) seeking, *inter alia*, indemnification for costs incurred in defending and settling an underlying case brought by

former Lessing's employee Stephen Papsis. Now, at the close of discovery, Granite, Lessing's, and Hanover have cross-moved for summary judgment. The court heard oral argument on the motions on November 9, 2022.

## BACKGROUND

The underlying issues are fully set out in the court's July 29, 2022 order on Berkley National Insurance Company's motion for summary judgment. *See* Order on Berkley's Mot. for Summ. J. (Order) (Dkt # 98). In short, on November 10, 2016, Papsis was a Lessing's employee working in the first-floor cafeteria at 100 Newport Avenue in Quincy – a building leased by Granite – when raw sewage backed up into his workstation. Papsis sued Granite (and Granite's landlord, Atlantic Newport Realty LLC (Atlantic)), claiming that his exposure to bacteria in the sewage caused a serious infectious foot injury. Granite's insurer, Berkley, paid the cost of defending and settling Papsis's lawsuit under a reservation of rights. It then filed suit against Granite and Atlantic in federal court seeking declaratory relief, arguing that Papsis's lawsuit fell within the fungi/bacteria exclusion of the insurance policy and that it was therefore entitled to reimbursement. The court agreed and granted partial summary judgment in Berkley's favor.

In addition to answering Berkley's claims, Granite filed a third-party action against Lessing's and Hanover, seeking declaratory judgment that

they had a duty to defend and indemnify Granite in the Papsis lawsuit and alleging that Lessing's and Hanover had breached their contractual obligations by failing to do so. *See* TPC (Dkt # 45) ¶¶ 63-105.

In the prelude to the exchange of lawsuits, on December 16, 2008, Granite executed a Food Services Management Agreement (FSMA) with Next Generation Vending and Food Services (Next Generation) to provide "cafeteria service services on [Granite's] premises." Lessing's Ex. 2 (Dkt # 104-2) ¶ 1. Lessing's assumed the FSMA on Next Generation's behalf on January 31, 2011. *See* Lessing's Ex. 3 (Dkt # 104-3). Section 28 of the FSMA states:

> [Lessing's] shall indemnify, defend, and hold harmless from and against all claims, demands, actions, liabilities, damages, losses, fines, penalties, costs and expenses (including reasonable attorneys' fees [sic] growing out of or in connection with (a) any breach of any [Lessing's] representations, warranties, or obligations hereunder, (b) food, food products, confections, non-alcoholic beverages or services to be rendered under the terms of this Agreement or any extension thereof, whether such services are performed by [Lessing's], its vendors, suppliers, agents or employees, or others for whom [Lessing's] may be legally responsible except as to those claims caused by the sole negligence of [Granite], its agents, employees, subcontractors or others for whom [Granite] may be legally responsible.

Lessing's Ex. 2 ¶ 28.

Further, Section 11 of the FSMA states:

> [Lessing's] shall carry comprehensive general liability insurance, including products, contractual, and broad form vendors'

3

coverage, with minimum limits of One Million Dollars ($1,000,000). [Lessing's] shall cause [Granite] to be named as additional insureds on said policies. . . . [Lessing's] shall furnish to [Granite] a certificate of insurance indicating that such coverage is in effect within thirty (30) days of the effective date of this Agreement and on each anniversary date thereafter turn the term hereof.

*Id.* ¶ 11.

Hanover issued a commercial general liability policy (the Policy) to Lessing's for the period from January 11, 2016 to January 11, 2017. *See* Lessing's Ex. 7 (Dkt # 104-7). This Policy was in effect on the day of Papsis's injury. Although Granite is not explicitly named as an additional insured in the Policy, the Policy's General Liability Broadening Endorsement extends additional insured status to

> [a]ny person or organization with whom [Lessing's] agreed in a written contract, written agreement or permit that such person or organization to add an additional insured on [Lessing's] policy is an additional insured only with respect to liability for 'bodily injury' . . . caused, in whole or in part, by [Lessing's] acts or omissions, or the acts or omissions of those acting on [Lessing's] behalf.

Hanover's Statement of Material Facts (SMF) (Dkt # 110) ¶ 14. The Policy contains a fungi/bacteria coverage exclusion that is essentially the same as the exclusion in Granite's policy with Berkley. *Id.* ¶ 15.

4

## DISCUSSION

"Summary judgment is warranted if the record, construed in the light most flattering to the nonmovant, 'presents no genuine issue as to any material fact and reflects the movant's entitlement to judgment as a matter of law.'" *Lawless v. Steward Health Care Sys., LLC*, 894 F.3d 9, 20-21 (1st Cir. 2018), quoting *McKenney v. Mangino*, 873 F.3d 75, 80 (1st Cir. 2017). The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If this is accomplished, the burden then "shifts to the nonmoving party to establish the existence of an issue of fact that could affect the outcome of the litigation and from which a reasonable jury could find for the opponent." *Rogers v. Fair*, 902 F.2d 140, 143 (1st Cir. 1990).

**Hanover's Motion for Summary Judgment**

Hanover argues that Granite is not an additional insured of the Policy by way of the Broadening Endorsement because Papsis's injuries were not caused "in whole or in part, by [Lessing's] acts or omissions, or the acts or omissions of those acting on [Lessing's] behalf." Hanover SMF ¶ 14. In the alternative, Hanover contends that even if Granite is an additional insured,

5

it is not owed coverage because the Papsis settlement falls within the fungi/bacteria exclusion. The court agrees with Hanover.

In its memorandum and order granting partial summary judgment in favor of Berkley, the court noted that "an insurer's duty to indemnify an insured for an underlying case that has settled rather than going to trial must be ascertained through the lens of the settlement and (at the summary judgment stage) any undisputed facts." Order at 9. The court ultimately concluded that, because the parties settled the Papsis lawsuit "to compensate Papsis for the infection to his foot," which he unwaveringly alleged was "caused by his exposure to bacteria in the toxic sewage that backed up into his workspace," the bacteria/fungi exclusion of the Berkley policy applied. *Id.*

Granite argues that because Hanover did not participate in the settlement negotiations resolving the Papsis claims, the court's reasoning as it pertained to the fungi/bacteria exclusion in the Berkley insurance policy does not apply. The court disagrees. Simply because Hanover was not a party to the underlying settlement does not render the parties' reasons for settling irrelevant in determining whether Hanover has a duty to indemnify Granite. Indeed, the court concludes that the underlying reasons for settling a case apply with equal force in determining an insurer's obligation to

6

indemnify an insured regardless of whether the insurer was involved in the third-party settlement negotiations. To conclude otherwise would be to unfairly allow Granite another bite at the apple with an insurer who did not have the benefit of a say in Granite's settlement strategy.

With that framework in mind, it is clear that the Policy's fungi/bacteria exclusion applies to the Papsis lawsuit. The exclusion's language is virtually identical to the fungi/bacteria provision that excluded Granite from coverage in the Berkley policy, and the parties' reasons for settling the Papsis suit remain unchanged. Accordingly, the court will grant summary judgment in Hanover's favor.[1]

**Lessing's' and Granite's Cross-Motions for Summary Judgment**

Granite argues that because the Papsis claims were made "in connection with . . . services to be rendered under the terms of" the FSMA, and because the claims were not "caused by" Granite's "sole negligence," Lessing's is required to indemnify Granite for the costs incurred in defending

---

[1] Additionally, the court will allow Lessing's' motion for summary judgment on Count III of the TPC, which alleges that Lessing's failed to name Granite as an additional insured under the Policy and seeks damages "[i]n the event that Lessing's['] failure to name Granite . . . results in harm to Granite." TPC ¶¶ 78-80. Even assuming that Lessing's failed to name Granite as an additional insured, that failure would not result in harm to Granite because – as discussed above – Granite is not covered under the Policy with respect to the Papsis lawsuit.

7

and settling the Papsis suit. Lessing's Ex. 2 ¶ 28. Lessing's, for its part, contends that none of Papsis's allegations were connected to "food, food products, confections, non-alcoholic beverages or services to be rendered under the terms of" the FSMA and that, in any event, Papsis's injuries were caused solely by Granite's negligence.

"[W]here material facts are not in dispute, interpretation of an indemnity clause is an issue of law." *Caldwell Tanks, Inc. v. Haley & Ward, Inc.*, 471 F.3d 210, 215 (1st Cir. 2006). "Indemnification provisions are to be read without any bias for the indemnitor or against the indemnitee." *Herson v. New Bos. Garden Corp.*, 40 Mass. App. Ct. 779, 782 (1996); *see also Shea v. Bay State Gas Co.*, 383 Mass. 218, 222 & n.8 (1981). "They are to be interpreted like any other contract, with attention to language, background, and purpose." *Herson*, 40 Mass. App. Ct. at 782; *see also Post v. Belmont Country Club, Inc.*, 60 Mass. App. Ct. 645, 651 (2004) ("In Massachusetts, where there is nothing to require strict construction of the clause under general contract rules, '[c]ontracts of indemnity are to be fairly and reasonably construed in order to ascertain the intention of the parties and to effectuate the purpose sought to be accomplished.'"), quoting *Bay State Gas Co.*, 383 Mass. at 222.

8

*Bryne v. City of Gloucester*, 297 Mass. 156 (1937), provides helpful guidance in the interpretation of indemnity clauses. In that case, the Supreme Judicial Court of Massachusetts (SJC) considered whether an indemnity provision between the City of Gloucester and one of its contractors for "any act, omission or neglect" on the part of the contractor covered landowners' suits against the city for certain unavoidable collateral damage to their buildings. *Id.* at 157. The SJC noted that, although it would normally construe the phrase "any act, omission or neglect" to cover more than just the consequences of negligent or improper actions, "reference to the situation of the parties when they made [the contract] and to the objects sought to be accomplished" compelled a contrary interpretation. *Id.* at 158. The contract was for construction of an underground tunnel on private land, and while injury to the buildings technically did not occur until the contractor began blasting, this injury was inevitable and not attributable to any negligence on the part of the contractor.[2] *Id.* at 159-160. The SJC

---

[2] The SJC further emphasized that the city and the contractor "must have expected that the city would acquire the necessary rights" to construct the tunnel at the time of agreement. *Id.* at 159. Thus, the injury "arose by reason of the city's agreements with the landowners" – *not* the actions of the contractor, which were within the contemplation of the parties at the time the city entered into the agreements. *Id.* at 160.

9

accordingly found that the indemnity provision did not extend to the landowners' suits.

Here, no matter how broadly one construes the phrase "in connection with," indemnification cannot plausibly extend to the Papsis lawsuit. By the plain terms of the contract, indemnification is limited to "food, food products, confections, non-alcoholic beverages or services to be rendered under the terms of" the FSMA. Granite does not dispute that the Papsis claims did not grow out of or in connection with food, food products, confections, or non-alcoholic beverages, instead hitching its argument for indemnification solely on the phrase "services to be rendered under the terms of" the FSMA. But it is clear from context that the services to be rendered under the FSMA are food-related services, not janitorial services.[3] As there is nothing in the FSMA to indicate that Lessing's intended to indemnify Granite against all eventualities, even those outside of the Palsgrafian zone of danger, it simply would not be reasonable to construe the

---

[3] Even the seemingly janitorial tasks – for example, the requirements to "maintain high standards of sanitation and . . . be responsible for routine cleaning and housekeeping in the food preparation and service areas," Lessing's Ex. 2 ¶ 4a, and to "maintain a program of proper sanitation control practices in accordance with applicable law," *id.* ¶ 8 – at core hinge on the provision of food. They are meant to cover a situation in which, for example, Lessing's serves food in an unhygienic manner, causing a customer to contract food poisoning, *not* a situation in which an employee contracts an injury while staying to clean up raw sewage that flooded into his workspace.

indemnification provision to cover the Papsis claims. These claims were premised on the exposure to bacteria in the toxic sewage that backed up into Papsis's workspace and not on any undertaking to provide food services. Accordingly, summary judgment is entered in favor of Lessing's on Counts I and II.

## ORDER

For the foregoing reasons, Hanover's motion for summary judgment is ALLOWED. Granite's motion for summary judgment is DENIED. Lessing's' motion for summary judgment is ALLOWED.[4]

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE

---

[4] Because Eugenia Kennedy's report had no impact on the court's summary judgment decisions, Lessing's' motion to strike (Dkt # 126) is DENIED AS MOOT.